UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Amy-Lin Larocque

        v.                          Civil No. 06-022-JD
                                    Opinion No. 2006 DNH 149

Jo Anne B. Barnhart, Commissioner,
Social Security Administration


O R D E R


        Amy-Lin Larocque brings this action pursuant to 42 U.S.C. §
405(g), seeking judicial review of the decision by the
Commissioner of the Social Security Administration denying her
application for Title XVI, Supplemental Security Income ("SSI"),
benefits.  Larocque contends that the Administrative Law Judge
("ALJ") inappropriately used the Medical-Vocational Guidelines
("the Grid") to determine that she is not disabled and improperly
evaluated the impact of her mental impairments on her ability to
work.  The Commissioner moves to affirm the decision.


Background

        Amy-Lin Larocque applied for SSI benefits in January of 2004
when she was thirty years old.  She alleged a disability since
March of 2002 due to depression and emotional problems.  Larocque
did not complete her secondary school education, leaving school
after the eighth grade.  She worked at a pet store as a cleaner

and retail clerk.  She lives with a roommate and her two sons.[1]

Her medical records document a history of mental illness since at least the age of fifteen.  Larocque received counseling at Manchester Mental Health following a referral in March of 2004 from Elliot Hospital, where she had been seen when police brought her in due to wounds on her wrists.  Larocque reported that she cut herself to relieve stress.  She reported drinking a six-pack of beer each night and smoking marijuana.  She also reported that she had been hearing voices since she was six or seven years old, when she was abused by her uncle and her stepfather, and that the voices "egged her on."  She was provisionally diagnosed at Manchester Mental Health as having post-traumatic stress disorder ("PTSD") and borderline personality disorder.

In April of 2004, Larocque was evaluated by Dr. Romulo Valdez, for the state disability services, who completed a "Comprehensive Psychological Profile."[2]  Larocque said she was

---

[1]The parties' joint factual statement refers to Larocque's husband but also states that Larocque lives with a roommate and two sons.  At the hearing, Larocque testified that she has six children, that three of the children live with their father, that a fourth child passes back and forth between Larocque and that child's father, and that the remaining two sons live with her.

[2]The parties attribute the evaluation to Dr. Valdez, and he signed the attestation that the information in the report was "based on a personal examination of this claimant by this examiner."  Admin. Rec. at 193.  On the first page of the report, however, the "Examiner" is identified as "Cheryl Searles" without

taking prescribed medications for schizophrenia, bipolar disorder, and PTSD.  She had cuts on her arms and said that she had done self-mutilation since she was fourteen.  She reported that she was sexually and physically abused by her uncle and stepfather, that she left home at fifteen and thereafter lived with friends and on the street, and that she had had severe alcohol dependence until four days before the evaluation.

Section VII of Dr. Valdez's report titled "Current Level of Functioning" is missing, and Section VIII, which appears to provide the diagnoses, is missing in part.  The administrative record jumps from page 191 to page 193, with page 6 of Dr. Valdez's report omitted.  The parties' joint factual statement does not explain the missing page but also does not cite to that page.

Based on his testing and evaluation, Dr. Valdez diagnosed Larocque with PTSD, mood disorder not otherwise specified that was secondary to PTSD with psychotic features, polysubstance dependence in early remission, and personality disorder with schizotypal, antisocial, and borderline features.  Dr. Valdez further stated that Larocque was not capable of managing her own

---

any indication as to her role or qualifications.

funds and expressed concern about her substance dependence and her impulsive judgment.

On May 20, 2004, a state DDS non-examining consultative psychologist, Dr. William Jamieson, reviewed Larocque's file and completed a Psychiatric Review Technique form based on the file. Dr. Jamieson reported that Larocque had depressive disorder not otherwise specified and personality disorder not otherwise specified.  He thought those disorders would cause mild limitations in Larocque's activities of daily living and social functioning, with moderate difficulties in maintaining concentration, persistence, and pace.  He found no extended periods of decompensation.  On the Residual Functional Capacity Assessment, Dr. Jamieson found moderate limitations in Larocque's ability to understand, remember, and carry out detailed instructions and in her ability to respond appropriately to changes in the work setting.  He noted that Larocque's records at that time, May of 2004, related primarily to physical rather than psychological issues.  Dr. Jamieson relied on Dr. Valdez's assessment except that he found the PTSD diagnosis unsupported. Dr. Jamieson also found, based on the medical record, that Larocque was not fully credible as to the extent of her limitations.  He concluded that, despite the limitations he found, Larocque could relate and respond appropriately and that

4

she could complete a normal work day and work week at a
reasonable pace.

Larocque received counseling at Manchester Mental Health
from March of 2004 through March of 2005.  During that time, she
continued to report depression and that she was hearing voices.
She often missed appointments and told her counselor that she did
not come because she got nervous about leaving the house.
Although she reported some improvement in January of 2005, she
was treated in the emergency department at Elliot Hospital on
February 25 because she cut herself after a fight with her
husband.  She said she cut her leg to relieve stress.  Despite
writing the police had found on the wall of her bedroom,
indicating that she wanted to kill herself, she denied suicidal
ideation.

On March 25, 2005, Larocque was evaluated by Dr. Angel
Martinez in connection with her application for benefits under
the Aid to the Permanently and Totally Disabled ("APTD") program
through the New Hampshire Department of Health and Human
Services.[3]  Dr. Martinez found that Larocque was "underattentive
to personal hygiene," but that her speech and affect were normal

---

[3]The parties included a summary of Dr. Martinez's evaluation
in their joint factual statement.  It appears, however, that Dr.
Martinez's evaluation was submitted only to the Appeals Council,
along with notice that Larocque was approved for APTD benefits.

and appropriate.  Joint Statement at 8.  Dr. Martinez noted that
Larocque's expressed thoughts were notable "for command auditory
and visual hallucinations."  Id.  Based on his evaluation, Dr.
Martinez found that Larocque had marked limitations in her daily
activities, moderate limitations in her social interactions, and
had a loss in her ability to tolerate work-related stress.  He
said that she would react to stress by becoming agitated, by
screaming, and by crying.  He diagnosed bipolar disorder and also
questioned schizoaffective disorder, alcohol abuse, and obsessive
compulsive traits.

       In April of 2005, Larocque underwent a consultative
psychological evaluation with Drs. Aisha Sabir, Lovie Hope Go,
and Albert Drukteinis, at the request of her attorney.  Larocque
described her daily activities.  She said she could not return to
work because dealing with the public was difficult for her.  In
their report, the doctors stated that Larocque was nervous, had a
flat emotional expression, had coherent and goal-oriented
thought, and was oriented in time, place, and person.  The
doctors assessed major depressive disorder, anxiety disorder not
otherwise specified, learning disorder, history of substance
abuse, and a personality disorder not otherwise specified.  The
report noted that Larocque demonstrated difficulty with
concentration and attention during their interview.  They

concluded that Larocque's mental condition had lasted for twelve months and could be expected to last for at least another twelve months.

Dr. Go completed a Medical Source Statement of Ability to do Work Related Activities (Mental) on May 3, 2005.  Dr. Go found slight limitations in Larocque's ability to follow simple instructions and to interact with co-workers and supervisors and moderate limitations in Larocque's ability to understand, remember, and carry out detailed instructions, to make judgments, and to respond appropriately to pressures in the work environment.  Dr. Go found that Larocque would have marked difficulty in interacting with the public and responding to workplace changes.

An administrative hearing was held on May 12, 2005, before ALJ Klingebiel.  Larocque appeared at the hearing and was represented by counsel.  Larocque explained that she left her jobs at the pet store and at a department store because she did not like to work with the public and that she left her cleaning job because she did not like being in a big building by herself.  She also said she was not working because she was trying to "get [her] head together" so that she could go out in public and work toward a GED.  She said that she heard voices, was afraid to leave her house, slept very little, had chronic nightmares, and

had no energy.  She also said that she could concentrate only for
a short time before her mind wandered, that she could not drive
because she was afraid, and that she left the house only when her
roommate made her go out for grocery shopping.  She was not then
taking medication or receiving counseling.  She said that she
drank alcohol only once or twice a month and that was to drown
out the voices in her head.

The ALJ issued his decision on July 14, 2005.  He concluded
that Larocque's diagnosed personality and depressive disorders
were severe but that her descriptions of her impairments and
their impact on her ability to work were not credible.  The ALJ
discredited the opinions of Drs. Sabir, Go, and Drukteinis
because Larocque had been referred to those doctors by her
attorney.  Based on the opinions of the DDS consultants, Drs.
Valdez and Jamieson, and Social Security Ruling 85-15, after
applying the Grid, the ALJ concluded that Larocque was not
disabled.  The Appeals Council denied her request for review.

<u>Discussion</u>

Larocque contends that the Commissioner's decision that she
is not disabled should be reversed because the ALJ did not
properly evaluate the effects of her mental impairments on her
ability to work and the ALJ failed to use a vocational expert to

show that jobs were available that Larocque could do.  The
Commissioner responds that the ALJ properly weighed the medical
opinions in the record and, following SSR 85-15, properly used
the Grid to determine that Larocque was not disabled.

A.  New Evidence

As a preliminary matter, as is noted above, the record of
Dr. Martinez's evaluation of Larocque, which is dated April 20,
2005, was apparently submitted only to the Appeals Council.  In
reviewing the Commissioner's decision, the court is limited to
the evidence that was submitted to the ALJ.  Mills v. Apfel, 244
F.3d 1, 5 (1st Cir. 2001).  When new evidence is presented to the
Appeals Council but review is denied, the court may review that
decision only if the Council gave "an egregiously mistaken ground
for this action."  Id.  A slight overstatement in the reason
given for denying review is not a serious mistake that allows
judicial review.  Id. at 6.  Alternatively, the court may remand
a case for further consideration if material new evidence is
submitted and the party introducing the evidence shows good cause
for failing to present that evidence to the ALJ.  See § 405(g);
Freeman v. Barnhart, 274 F.3d 606, 109-10 (1st Cir. 2001).

In this case, Larocque did not ask the court to review the
Appeals Council's decision or to remand the case for further

administrative proceedings in light Dr. Martinez's evaluation. Larocque has shown neither an egregious mistake by the Appeals Council nor good cause for not submitting that evidence. Therefore, the court will not review the Appeals Council's decision and will not consider Dr. Martinez's evaluation.

B.  Review of the Decision

The court must uphold a final decision of the Commissioner to deny an application for benefits unless the decision is based on legal or factual error.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  The Commissioner's factual findings are conclusive if based on substantial evidence in the record.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  In making the disability determination, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The ALJ's fact finding is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."

10

Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

> The ALJ found that Larocque could
>
> carry out simple tasks for two hour intervals during an
> eight hour work day, and [was] able to maintain
> concentration and attention sufficient to perform simple
> work tasks for an eight hour work day, assuming short work
> breaks on average every two hours.  She [was] able to
> interact with the public on an occasional basis, provided
> interaction does not require more than exchange of non-
> personal work-related information or hand-off of products or
> materials, and [was] able to work in the presence of co-
> workers and engage in appropriate occasional social
> interaction.

Admin. Rec. at 22.  Despite his optimistic evaluation, the ALJ found that Larocque could not return to her former work in a pet store because of her "current mental limitations."   Id.

Once a claimant meets her burden of showing that she cannot return to her former work at the fourth step of the sequential analysis, the burden shifts, at the fifth step, to the Commissioner to provide evidence of work the claimant can do to support a determination that the claimant is not disabled.[4] Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  When the claimant's impairments are only exertional, the Commissioner may rely on the Grid, at 20 C.F.R., Part 404, subpart P, Appendix P, tables 1-3, to support that determination.   Id.  In contrast, however, when the claimant's only impairments are mental,

_____

[4]See 20 C.F.R. § 416.920.

11

"the final consideration is whether the person can be
expected to perform unskilled work.  The basic mental
demands of competitive, remunerative, unskilled work include
the abilities (on a sustained basis) to understand, carry
out, and remember simple instructions; to respond
appropriately to supervision, coworkers, and usual work
situations; and to deal with changes in a routine work
setting.  A substantial loss of ability to meet any of these
basic work-related activities would severely limit the
potential occupational base."

Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 286

(1st Cir. 1986) (quoting SSR 85-15, 1985 WL 56857 at *4).

    In this case, the ALJ determined Larocque's residual

functional capacity based on the opinions of Drs. Valdez and

Jamieson, while he discounted the opinions of Drs. Go, Sabir, and

Drukteinis.  The ALJ stated that the opinions of Drs. Jamieson

and Valdez were supported by the evidence.  He also found that

"because Dr. Valdez had the opportunity to evaluate substantially

all of the medical evidence of record and conduct a clinical

examination, significant weight is accorded to his opinion."

Admin. Rec. at 21.


    1. The Administrative Record

    At the fifth step, the Commissioner bears the burden of

showing that the claimant is able to perform work other than her

former work.  Seavey, 276 F.3d at 5.  As part of the analysis at

the fifth step, the ALJ is required to make a residual functional

capacity assessment based on the evidence in the record.  20 C.F.R. §§ 416.920(e) & 416.945.  On review, the court must determine whether the residual functional capacity assessment is supported by substantial evidence in the record.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 430-31 (1st Cir. 1991).

Contrary to the ALJ's statement according Dr. Valdez's opinion significant weight, important information was added to Larocque's medical records after Dr. Valdez's evaluation in April and after Dr. Jamison's review in May of 2004.  For example, in August of 2004, Larocque reported to her counselor that she was having nightmares and hearing voices.  In January of 2005, she explained to her counselor that she missed appointments because she was nervous about leaving her apartment.  In February of 2005, Larocque was examined in the emergency department at Elliott Hospital when she cut herself following a fight with her husband, purportedly in an effort to relieve stress, and the police found she had written on her bedroom wall that she wanted to kill herself.  Drs. Jamieson and Valdez did not have the opportunity to review the evaluation done by Drs. Go, Sabir, and Drukteinis, who diagnosed a major depressive disorder, anxiety disorder, learning disorder, and personality disorder and found that Larocque demonstrated difficulty with concentration and

13

attention and found Larocque had marked difficulty in interacting with the public and responding to changes in the workplace.  Drs. Valdez and Jamieson also did not review Dr. Martinez's evaluation, which indicates significant limitations.

Because the ALJ placed "significant weight" on Dr. Valdez's opinion, which also served as the basis for Dr. Jamieson's opinion, his report is highly material to the court's review.[5] The most significant parts of Dr. Valdez's report, Section VII titled "Current Level of Functioning" and part of Section VIII are missing from the administrative record.  It is not clear whether the ALJ relied on Dr. Valdez's complete report or whether the report provided to him was also missing a page.[6]  In the absence of the page providing Dr. Valdez's functional assessment and part of his diagnosis, the record lacks significant evidence to support the ALJ's residual functional capacity assessment and his finding that Larocque was not disabled based on that assessment.

---

[5]Dr. Jamieson's opinion is merely a review of Larocque's medical record up to that time that is based on Dr. Valdez's opinions.

[6]Because the ALJ did not cite any of Dr. Valdez's functional assessments, that page may have been missing from the record at the time of the ALJ's review.

14

2.  Reliance on the Grid

In addition, even if the ALJ's residual functional capacity assessment were properly supported, his reliance on the Grid in this case was inappropriate.  If a claimant's mental impairments significantly affect her ability to perform a full range of jobs, the ALJ cannot rely on the Grid to carry the burden of showing that jobs exist which the claimant can do.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). Special caution is required in evaluating the effects of mental illness when relying on the Grid:

> Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty adapting to the demands of work and work-like settings.  Determining whether these individuals will be able to adapt to the demands or "stress" of the workplace is often extremely difficult.  This section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis. . . .  Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857 at *5-*6.

The ALJ found that Larocque would respond appropriately to supervisors and co-workers and had no difficulty related to stress in a work setting.  He found that Larocque could "perform any unskilled job that does not require more than occasional public contact."  Admin. Rec. at 23.  The ALJ further found,

15

without any citation to authority, that "the mere inability to perform substantially all unskilled occupations does not equate to a finding of disability." Id.  He concluded that she was not disabled, using the Grid as a framework based on SSR 85-15.

Even Dr. Jamieson, however, found that Larocque would only be able to respond appropriately to simple and routine changes in her work setting and that she had "some difficulties in dealing with work related stresses." Admin. Rec. at 185.  None of the evaluations of Larocque in the record indicate that she would not have stress in dealing with a work setting.  In finding otherwise, the ALJ ignored Larocque's significant limitations, which undermines his conclusion that she was not disabled. Nguyen, 172 F.3d at 35.  In addition, difficulties associated with responding to changes in the work setting and to work-related stress generally require an individualized assessment through testimony from a vocational expert.  SSR 85-15, 1985 WL 56857 at *6; Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005). Because the ALJ did not explain why an individualized assessment was not needed here and ignored important limitations in Larocque's ability to work, substantial evidence is lacking to support the determination at step five that Larocque is not disabled.  See id.

Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted.  The Commissioner's motion to affirm (document no. 11) is denied.  Because this is a sentence four remand, the clerk of court will enter judgment, and remand the case for further administrative proceedings.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

December 20, 2006

cc:  David L. Broderick, Esquire
     Cheryl S. Driscoll, Esquire